### MAY v. TRAPHAGEN.

*(City Court of Brooklyn, General Term. June 27, 1892.)*

1. TAX TITLES—VALIDITY OF TAX—APPORTIONMENT BETWEEN CITY LOTS.
   An objection to a tax title on the ground that the tax was illegal in that it was based on an assessment apportioned between two lots, and that it does not affirmatively appear that the apportionment was made at the request of the owners, cannot be maintained in the absence of evidence that such request was not made, and in view of the testimony of the assessors that they never apportioned except on request.

2. SAME—GROSS ASSESSMENT OF ADJACENT LOTS.
   The gross assessment of two adjacent lots, referring to the two lots as one "parcel," is not error under Laws 1888, c. 583, tit. 10, §§ 9, 11, (Brooklyn Charter,) contemplating such assessment, and providing for the apportionment thereof in case of objection.

Appeal from trial term.

Action by Moses May against Henry Traphagen. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before VAN WYCK and OSBORNE, JJ.

*Gratz Nathan*, for appellant. *Ira Leo Bamberger*, for respondent.

VAN WYCK, J. The plaintiff claims title to premises known on the assessment map of the city of Brooklyn as "Lot 21, block 222, ward 17," by virtue of a sale by the registrar of arrears for taxes of 1882, 1883, and 1884. This lot, and lot No. 20, prior to the levying of the taxes of 1882, were owned by defendant, and constituted one lot, known on same map as "Lot No. 19." For the taxes of 1882 lot 19 was assessed at the value of $4,500, and a tax levied thereon of $94.89. Thereafter the map was changed by dividing lot 19 into lots 20 and 21. For the taxes of 1883 these two lots were assessed at the gross value of $4,500, and a tax levied thereon of $107.60. It seems that defendant's brother became the owner of the part of the original lot 19, designated on the changed map as "Lot 20," after the levying of the tax of 1882.

It also appears that, some time after the levying of the taxes of 1882 and 1883, respectively, the assessments and taxes were apportioned for these years between lots 20 and 21, and correction made in the names of parties taxed. These respective apportionments of the taxes of 1882 and 1883, the defendant insists, were illegal, because it does not affirmatively appear that it was done at the request of one of the owners, and that the gross assessment of $4,500 for1883 on lots 20 and 21 was illegal, because these lots were not separately assessed. The answer to the objection to the apportionments is that the evidence fails to establish that these apportionments were not made at the request of defendant's brother, who owned lot 20. Even if it was necessary to a legal apportionment that either the owner of lot 20 or the owner of lot 21 should have requested the same, the president of the board of assessors testified that they never apportioned, except at the request of some one claiming to be interested. See consolidation act of Brooklyn, (Laws 1888, c. 583, tit. 10, § 10, subd. 2, and Id. § 11.) The gross assessment of lots 20 and 21 for 1883 at $4,500 did not render the same void, for the assessors complied with the law in referring to the assessment map, and assessed these two lots as one "parcel." Section 9. If defendant had objected thereto, the assessors would have changed it by making separate assessments on each lot. Section 11 provides for the apportionment of such gross assessments and taxes where more than one person is interested in the piece so assessed and taxed. No objection is made to the tax of 1884. We do not think the trial court's refusal to uphold the contentions of the defendant, hereinbefore referred to, was error.

The judgment must be affirmed, with costs.